**656**

Sheldon **PORTNER**, Esquire

v.

Michael **FRANCK**, Esquire, et al.

Civ. A. No. 72–1645.

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1972.

Thomas B. Rutter, Philadelphia, Pa., for plaintiff.

Michael Franck, Detroit, Mich., for defendants.

MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

The action which is presently before this Court involves a special investigation ordered by the Court of Common Pleas of Philadelphia on October 28, 1971 into alleged solicitation of negligence cases by various attorneys. The Order of October 28, 1971 transferred responsibility for the investigation from the Committee of Censors to a Special Counsel, Michael Franck, Esquire, who had been appointed by the Court of Common Pleas. Mr. Franck, pursuant

to the Order, added William P. Stewart, Esquire, and Bruce Sagel, Esquire, as Assistant Counsel to assist him in the investigation.

On November 5, 1971 the defendants started their general investigation and in December, 1971 the defendants began investigating Sheldon Portner, Esquire, the plaintiff, and another Philadelphia lawyer named Norman Shigon, Esquire. This particular investigation continued through April, 1972.

On April 7, 1972 the defendants filed a Petition for Imposition of Discipline on the plaintiff and Mr. Shigon. On May 10, 1972 Mr. Portner submitted his Preliminary Objections to the Petition for Imposition of Discipline, together with a Petition to Show Cause why the Petition for Imposition of Discipline should not be dismissed. The Supreme Court of Pennsylvania on May 26, 1972 dismissed the Preliminary Objections to show cause, which the plaintiff had filed. Therefore, on June 14, 1972 Mr. Portner filed his Answer to the Petition for Imposition of Discipline in which he denied the allegations.

Subsequently, the investigation continued as to alleged solicitations only by Mr. Portner. On June 20, 1972, counsel for Mr. Portner sent a letter to the President Judge of the Common Pleas Court of Philadelphia in which he stated that Mr. Portner's constitutional rights were being violated and his legal practice was being destroyed because of the renewed investigation. The President Judge appointed a Master to hear testimony regarding the allegations which were made by Mr. Portner. The hearing before the Master was held on July 14, 1972 and the Master's Report has not as yet been filed.

On August 13, 1972 Mr. Portner was ordered, by letter, to appear for further questioning concerning alleged solicitation. Mr. Portner believes that a new Petition for Imposition of Discipline naming Mr. Portner as the only respondent and referring to matters not origi-nally brought out involving the Petition filed on April 7, 1972 will be forthcoming. Mr. Portner has filed this present action to enjoin the defendants from any further activity of any kind relating to Mr. Portner or any of his clients except for the actual trial preparation for and trial of the matter of the April 7, 1972 Petition for Imposition of Discipline. The defendants have filed a Motion to Dismiss. This Court held a hearing on August 25, 1972.

The plaintiff predicates federal jurisdiction upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, the Federal Civil Rights Act. The defendants' basis for their Motion to Dismiss is (1) the Complaint fails to state a claim against defendants upon which relief can be granted, (2) the Court lacks jurisdiciton over the subject matter, (3) the interest of comity require this Court to defer to the state court proceedings, and (4) the action is barred by 28 U.S.C. § 2283, the Federal Anti-Injunction Statute.

Initially, the United States Court of Appeals for the Third Circuit in DeVita v. Sills, 422 F.2d 1172 (1970), held, *inter alia*, that a federal district court had equitable jurisdiction, based upon 42 U.S.C. § 1983, to enjoin a state judicial inquiry looking toward an attorney's disbarment while a criminal indictment was pending in the Superior Court of New Jersey notwithstanding 28 U.S.C. § 2283. The plaintiff in *DeVita, supra*, alleged violation of his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

In Taylor v. Kentucky State Bar Association, 424 F.2d 478, (6th Cir. 1970) the Court held, *inter alia* that the Complaint stated a claim for which relief could be granted under 42 U.S.C. § 1983 and invoke the Court's jurisdiction where: (1) the defendant Bar Association instituted the proceedings against the plaintiff under the color of certain state statutes, court rules and professional canons which were alleged to be unconstitutional, (2) the proceedings were instituted in bad faith with no real hope of ulti-

mate success and (3) the proceedings were calculated to have a "chilling effect" on plaintiff's First Amendment activities because of his representation of persons and organizations advocating controversial ideas.

Also, in Eisenberg v. Boardman, 302 F.Supp. 1360, (W.D.Wisc.1969), a cause of action founded upon 42 U.S.C. § 1983 would be allowed if the circumstances showed a lack of good faith and irreparable injury. The Court in Eisenberg, *supra*, held that in the Complaint the disciplinary proceeding did not show that the proceeding was brought in bad faith, but rather, it charged a course of conduct which was alleged to be unprofessional.

The DeVita case, *supra*, allowed the plaintiff to maintain an action in equity notwithstanding 28 U.S.C. § 2283. However, in DeVita, *supra*, the factual background is not akin to the case which is before this Court. In DeVita, *supra*, the relief sought was the enjoining of a civil action prior to the completion of a criminal prosecution arising out of some alleged misconduct. The Taylor and Eisenberg cases, *supra*, are closer factually to the case at bar since they both deal with disbarment proceedings without any overtones of any pending criminal prosecution. In both cases one of the prerequisites for equitable relief, is that the plaintiff would have the burden of proving bad faith by the defendants. See also Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ In the present case, the defendants are acting pursuant to a Court Order signed by the President Judge of the Common Pleas Court of Philadelphia. The staff which has been set up by the defendants is in accordance with the Court Order. In the hearing on August 25, 1972 there were allegations that the defendants and their staff acted in bad faith. However, what the plaintiff may call bad faith is nothing more than an investigation being carried out by the defendants and their staff. It is not difficult for this Court to see how the plaintiff could interpret the actions of the defendants as being done in bad faith, but when people have to investigate possible solicitation by various attorneys there will be a certain amount of problems that will be encountered by both sides. To call these problems "bad faith" would be placing a misnomer on the function of the investigation.

Additionally, the defendants in this action are court appointed counsel. They operate within the limits of that Order. The Order and the manner in which the special counsel and his staff have conducted the investigation have not violated any of the plaintiff's constitutional rights. The Court in Taylor, *supra*, stated the basis in which federal courts would interfere with a state's disbarment procedures, it is as follows:

A general rule, inherent in American Federalism, is that courts of the United States will not interfere with a state's enforcement of its local laws. Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). A fortiori should this rule apply where the dispute is of a peculiarly local character, as is this one. It has long been recognized that the states have "autonomous control over the conduct of their officers, among whom * * * lawyers are included," Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed. 2d 1342 (1957), and that the state supreme courts and bar associations bear the primary and often painful responsibility of policing the profession. See Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917). Nevertheless, the Supreme Court has instructed that where a plaintiff alleges "highly unusual and very limited circumstances," that is: "(1) a bad-faith use of the state's legal machinery with the purpose of inhibiting the exercise

of the right of free speech (or, alternatively, the existence of a statute unconstitutional on its face affecting free speech) and (2) a probability of irreparable injury, which is established if there is a showing of a significant chilling effect on speech that cannot be avoided by state court adjudication." Sheridan v. Garrison, 415 F.2d 699, 709 (5th Cir. 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970) federal injunctive power under 42 U.S.C. § 1983 (1964) may be the appropriate remedy. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cox v. Louisiana, 348 F.2d 750 (5th Cir. 1965). It is not necessary that the state statute under which the proceedings were threatened or instituted be unconstitutional on its face. The Supreme Court has recently stated:

"We have not hesitated on direct review to strike down applications of constitutional statutes which we have found to be unconstitutionally applied to suppress protected freedoms. See Cox v. Louisiana, [379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965)]; Wright v. Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349; Edwards v. South Carolina, [372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)]." Cameron v. Johnson, supra, 390 U.S. at 620, 88 S.Ct. at 1340.

■ The constitutional problems which have been raised by the plaintiff are without merit. The plaintiff will have the right to be confronted by his accusers and cross-examine them in a hearing before a Three-Judge Discipline Court of the Court of Common Pleas of Philadelphia if there should be a new Petition for Discipline which might be filed in addition to the one of April 7, 1972.

■ There has been proven no violation of the equal protection clause of the federal constitution. Special Counsel is following the dictates of the President Judge's Order of October 28, 1972. There was no evidence at the hearing before this court that Special Counsel was only investigating certain individuals and not other people who might be involved in the solicitation of negligence cases.

■ Mr. Portner's free speech has not been abrogated in any manner. He has written to his clients explaining the investigation; he has petitioned the President Judge about improper investigative techniques; he has filed this action in this Court; and it would not be unforeseeable for Mr. Portner to take other action which he deems necessary to protect his interest.

■ This Court need not address itself to the other points raised by the defendants in their Motion to Dismiss. Since there is no violation of Mr. Portner's constitutional rights, this Court lacks jurisdiction under 42 U.S.C. § 1983, the Federal Civil Rights Act. See DeVita, *supra*.

This Court is aware of the problems which are manifest in a case such as the one at Bar and it need only be said that we are sure that Special Counsel, and perhaps more importantly, Mr. Portner and all others in his situation, will have their day in the courts of the Commonwealth of Pennsylvania.

For the reason stated above, defendants' Motion to Dismiss will be granted.