**NORFOLK AND WESTERN RAIL-WAY COMPANY et al.,
Plaintiffs,**

**v.**

**The Honorable William L. BEATTY, Judge, et al., Defendants.**

**No. A–Civ–75–0033.**

United States District Court, S. D. Illinois, S. D.

July 2, 1975.

Judgment Affirmed Dec. 8, 1975.
See 96 S.Ct. 439.

Albert E. Schoenbeck, St. Louis, Mo., for Norfolk and Western Ry. Co., and Missouri Pacific R. Co.

Elmer Price, St. Louis, Mo., for Walker Towing Corp. and Huffman Towing Co.

Joseph A. Murphy and Wilder Lucas, St. Louis, Mo., for Inland Tugs Co.

Griffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, Springfield, Ill., Michael D. O'Keefe, St. Louis, Mo., for Inland Waterways and Federal Barge Lines, Inc.

Howard H. Braverman, Springfield, Ill., John T. Roach, Alton, Ill., Ill. State Bar Ass'n, amicus curiae.

Gerald B. Cohn, Bethalto, Ill., Madison County Bar Ass'n, amicus curiae.

Thomas H. Price, Jr., William J. Scott, Atty. Gen., Springfield, Ill., for defendant Judges.

Before CUMMINGS, Circuit Judge, MORGAN, Chief District Judge, and WOOD, District Judge.

### ORDER

HARLINGTON WOOD, Jr., District Judge.

Pursuant to the Three-Judge Court Act, 28 U.S.C. §§ 2281, 2284, Plaintiffs have challenged the constitutionality of § 707, Chapter 110A of the Illinois Revised Statutes [1] as applied to them by the Defendants so as to limit the participation of Plaintiffs' out-of-state attorneys in pending litigation in the Circuit Courts of Madison County, Illinois. The Plaintiffs' attorneys are licensed to practice law in the State of Missouri, but not in the State of Illinois. They specialize in Federal Employers' Liability Act and Jones Act cases and appear from time to time together with local Illinois counsel on behalf of Plaintiffs to defend Plaintiffs as defendants in numerous cases pending in the state courts of Madison County, Illinois. Defendants have directed Plaintiffs to secure attorneys licensed to practice law in Illinois to serve as their principal counsel in those pending cases. In some instances, Defendants have entered orders striking the names of the out-of-state attorneys of Plaintiffs as counsel of record. . These directions and orders, however, permit the out-of-state counsel of Plaintiffs to be associated in the cases with local counsel, but only in a supporting, consulting or advisory role at trial. They are not prohibited from giving legal or tactical advice before or during the course of litigation or participating in pretrial discovery.

The statute in question, referred to by Defendants as Supreme Court Rule 707, provides that an attorney from any other jurisdiction may, in the discretion of the court, be permitted to participate in the trial or argument of a particular case notwithstanding the general requirements for admission to the Illinois Bar as a prerequisite to practice in the courts of this state. In addition to this rule permitting admission *pro hac vice*, the State also has rules concerning the admission of attorneys seeking their initial license to practice law, and for those seeking to be admitted upon foreign licenses.

The merits of the issue have been briefed by the parties and the Court has had the benefit of the briefs of the Illinois State Bar Association and the County Bar Association of Madison County as *amici curiae*. No brief on the merits has been filed for Defendants by the Attorney General of Illinois, who had previously appeared in their behalf.

Supreme Court Rule 707 is akin to a statute and is treated as such. The word "statute" as used in § 2281, Title 28, "is a compendious summary of various enactments by whatever method they may be adopted, to which a State gives her sanction," and is construed here to include Rule 707. *American Federation of Labor v. Watkins*, 327 U.S. 582 at 592–93, 66 S.Ct. 761, 765–66, 90 L.Ed. 873, 879–80 (1945).

Plaintiffs rely primarily on *Spanos v. Skouros Theatres Corporation*, 364 F.2d 161 (2d Cir. 1966). That case involved a Sherman Act suit in a federal court, and permitted an out-of-state attorney, not admitted in that state or district, to collect for his legal services rendered in the case. As the constitutionality of a state statute or Supreme Court rule regulating the practice of law in the state was not challenged, the case is thus distinguishable. Further, some of the language from the

---

1. § 707 (Supreme Court Rule 707). Foreign Attorneys in Isolated Cases

Anything in these rules to the contrary notwithstanding, an attorney and counselor-at-law from any other jurisdiction in the United States, or foreign country, may in the discretion of any court of this State be permitted to participate before the court in the trial or argument of any particular cause in which, for the time being, he is employed. S.H.A. ch. 110A, § 707 (Supp.1975).

opinion relied upon by Plaintiffs was not necessary to the decision of that issue.

In dissenting from the majority opinion, Chief Judge Lumbard stated:

> The opinion of the majority would seem to reduce to zero the power of any court in New York, state or federal, to exercise any control over who practices law in New York where the legal advice sought concerns a "federal claim or defense," a test which is broad enough to include almost anything in these days of ever-burgeoning federal jurisdiction. Surely it cannot be seriously questioned that courts ought to have the power to regulate who practices before them for their own protection and that of litigants. 364 F.2d at 172.

In *Silverman v. Browning,* 359 F. Supp. 173 (D.C.Conn.1972), *aff'd,* 411 U.S. 941, 93 S.Ct. 1927, 36 L.Ed.2d 406 (1973), the Plaintiffs sought to employ an out-of-state attorney to appear in their behalf *pro hac vice* in civil litigation in a Connecticut state court, but the admission of the out-of-state attorney to represent Plaintiffs was denied under a statute similar to that of Illinois. The majority abstained, but retained jurisdiction pending final determination of the matter of admission by the Supreme Court of that state. The majority disagreed as to their reasons for abstaining, and Smith, Circuit Judge, dissented. In this dissent, he stated, "The admission to practice before the state courts in ordinary civil actions before them is a matter for those courts, with which we should not unnecessarily interfere." 359 F.Supp. at 180.

The dissent goes on to suggest "that a more liberal admission policy more in tune with modern specialization and mobility would be desirable", but that that is a matter for the state to determine. No constitutional basis is found "to grant a civil litigant, patient or other client the right to compel the admission of nonresidents to the practice of law, medicine, or other profession within a state." *Id.* at 181.

Since state rules on *forum non conveniens* govern in F.E.L.A. and Jones Act matters, by analogy state procedure should control here. *Missouri ex rel Southern Ry. v. Mayfield,* 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950).

The Illinois statute is not unreasonable. It is not a complete bar to out-of-state lawyers, but permits their full participation in isolated cases on a case-by-case determination. Nor in the present Madison County cases is the participation of out-of-state attorneys completely barred. They may be present and participate with local counsel, though that participation is limited.

That the cases are of federal origin, that the Plaintiffs' attorneys have been permitted to appear without limitation numerous times in the past, that the cases are presently being prepared for trial, that the Plaintiffs' attorneys are specialists regularly representing Plaintiffs in Madison County and elsewhere, that Plaintiffs in the state cases have freedom to select the forum of their choice, that the accidents involved occurred elsewhere, that Plaintiffs' attorneys have caused no disciplinary problems—these are not factors singly or cumulatively which require that the Illinois statute be found constitutionally deficient. To view it otherwise would be for this Court to create a limited federal or national bar and to impose it on the states. To do so would be in total disregard of the state's great interests in the control and supervision of the practice of law in its own courts through reasonable requirements for licensing and admission.[2] As suggested

---

2. The United States Supreme Court has quite recently expressed its view that the states have a very strong interest in regulating the practice of law within their boundaries. In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Court said:

> We recognize that the States having a compelling interest in the practice of professions within their boundaries, and that

by the dissent in *Silverman*, such factors may suggest the desirability of a more liberal exercise of discretion by the judges under the present Illinois statute, or a modification of that statute to fit circumstances such as these, but those matters are considerations for the state and not this Court.

The relief sought by Plaintiffs is denied, and the Defendants' Motion to Dismiss is allowed.

as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions. We also recognize that in some instances the State may decide that "forms of competition usual in the business world may be demoralizing to the ethical standards of a profession." *United States v. Oregon State Medical Society*, 343 U.S. 326, 336, 72 S.Ct. 690, [697,] 96 L.Ed. 978 (1952), see also *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 611–613, 55 S.Ct. 570, [571–572,] 79 L.Ed. 1086 (1935). The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been "officers of the courts." See *Sperry v. Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, [1325,] 10 L.Ed.2d 428 (1963); *Cohen v. Hurley*, 366 U.S. 117, 123–124, 81 S.Ct. 951, [958,] 6 L.Ed.2d 156 (1962); *Law Students Research Council v. Wadness*, 401 U.S. 154, 157, 91 S.Ct. 720, [723,] 27 L.Ed.2d 749 (1971). In holding that certain anticompetitive conduct by lawyers is within the reach of the Sherman Act we intend no diminution of the authority of the State to regulate its professions. 421 U.S. at 792, 95 S.Ct. at 2016.

The facts of *Goldfarb*, of course, are very different from the facts in the instant case, but we feel that the language quoted above supports our view here. And the recent decision of the Second Circuit in *Bedrosian v. Mintz*, 518 F.2d 396 (1975), while it again involves different facts than the case at bar, also supports our result.